IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| KAREN MARIE COLLIER, | ) | CIVIL ACTION NO. 9:13-3323-DCN-BM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits ("DIB") on July 5, 2011, alleging

disability beginning July 2, 2010 due to heart impairments including hypertropic cardiomyopathy,

ventricular tachycardia ("VT"); implanted pacemaker/defibrillator with one-hundred percent

pacemaker dependency; severe migraine headaches; and sleep apnea. (See R.pp. 249-250, 273).

Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a

hearing before an Administrative Law Judge ("ALJ"), which was held on August 8, 2012. (R.pp.

142-168). The ALJ thereafter denied Plaintiff's claims in a decision issued August 30, 2012. (R.pp.

31-39). On October 17, 2013, the Appeals Council denied Plaintiff's request for a review of the



ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty-nine (59) years old on her alleged disability onset date, has a high school education and past relevant work experience as a field service assistant and mechanical engineering assistant. (R.pp. 39, 147-148, 249, 274). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months.

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of coronary artery disease, cardiomyopathy, hypertension, and obesity (R.p. 33), she nevertheless retained the residual functional capacity ("RFC") for the full range of light work,[2] except that she cannot climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme temperatures; and must avoid all exposure to hazards such as unprotected heights or dangerous, moving machinery. (R.p. 36). The ALJ further

---

[1] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).



found that Plaintiff was capable of performing her past relevant work as a field service assistant and a mechanical engineering assistant with this RFC, and thus was not disabled during the period at issue. (R.p. 39).

Plaintiff asserts that in reaching this decision, the ALJ erred because he failed to perform an analysis of Plaintiff's ability to perform her past relevant work that complies with applicable law, did not properly assess the medical opinion evidence, and did not consider all of Plaintiff's impairments (in particular her right knee arthritis and migraine headaches) in making the RFC assessment. However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. <u>Laws</u>, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

### **Medical Records**

In January 2001 (almost ten years before she stopped working), Plaintiff had a cardiac defibrillator installed due to non-obstructive hyperthropic cardiomyopathy with pre-syncope. She subsequently had a syncopal episode with probable supraventricular tachycardia ("SVT"), a type of abnormal rapid heart rhythm, in October 2001, underwent AV node ablation in January 2002, and received a replacement defibrillator in August 2004 (R.pp. 361, 423).

In April 2008, Plaintiff reported to Dr. Isaias Tesfazion at Kaiser Permanente in Virginia that her right knee was painful and mildly swollen. Plaintiff said that her condition improved with rest, and worsened with going up and down stairs. On examination Plaintiff's right knee was found to be mildly swollen and warm, and she had a normal range of motion. (R.p. 440-

4



442). Later that month, a physician's assistant diagnosed Plaintiff with mild osteoarthritis of her right knee, and this diagnosis was accepted by a physician.  (R.p. 443-444).

Medical records indicate that Plaintiff underwent another replacement defibrillator procedure in June 2009, at which time it was noted that Plaintiff had had no SVT or VT since her AV node ablation in 2002. (R.pp. 423-424, 427-428).  Plaintiff also underwent pacemaker implantation some time prior to January 2010. (R.pp. 611-612).

At an appointment with Dr. Tesfazion on January 8, 2010 (approximately six months prior to Plaintiff's alleged disability onset date), Plaintiff reported that she was experiencing chronic pain on the right side of her back and "on/off" left elbow and bilateral knee pain.  However, on examination she was not remarkable for stiffness, tenderness, or limitation of motion. (R.p. 598).  Plaintiff had a thoracic CT performed later that month, which revealed a normal appearing heart with no effusion or pneumothorax, and normal bony structures.  (R.pp. 611-612).  In February 2010, Plaintiff reported she had had no recent headaches.  (R.p. 735).

On August 24, 2010 (now *after* Plaintiff alleges her medical condition rendered her disabled), Plaintiff was examined for the first time at Inlet Medical Associates in Murrell's Inlet, South Carolina (Plaintiff retired from her job in July 2010 and had moved from Virginia to South Carolina thereafter).  Family Nurse Practitioner ("FNP") Gail Hanna noted that Plaintiff had no acute problems and was feeling well at that time, but that Plaintiff had experienced headaches and anxiety, had a pacemaker, and a history of atrial fibrillation.  (R.pp. 664-666).  Plaintiff began treatment with cardiologist Dr. Craig Lieberman on September 3, 2010.  Dr. Lieberman noted that Plaintiff had mild dyspnea (shortness of breath) but no chest pain.  Other findings, including a musculoskeletal assessment, were normal.  Dr. Lieberman assessed Plaintiff with hyperlipidemia; coronary artery



disease, native vessel; cardiomyopathy, hypertropic; and status, AICD (automatic implantable cardioverter defibrillator) in situ. He further noted that Plaintiff's defibrillator was functioning normally. (R.p. 681-683). On November 23, 2010, Plaintiff complained to FNP Virginia Bell at Inlet Medical Associates about acute left knee pain which had been occurring for two days. X-rays of her left knee revealed osteoarthritis, and Mobic, Medrol, and Vicodin were prescribed. (R.p. 659). In November 2010, Plaintiff was diagnosed with benign hypertension. (R.p. 646).

On December 3 and 7, 2010, Dr. Lieberman evaluated Plaintiff and conducted defibrillator reviews. Dr. Lieberman noted dyspnea, but other reviews of systems were negative. Plaintiff also had normal musculoskeletal findings. Plaintiff was assessed with hyperlipidemia, coronary artery disease (native vessel which was non-critical), and hypertropic cardiomyopathy. It was noted that Plaintiff's defibrillator was functioning normally and there were no sensed or discharged events. (R.pp. 687-689).

In April 2011, Dr. Lieberman noted that Plaintiff had dyspnea, but no chest pain or palpitations, while a review of systems revealed that other symptoms were "not present." Plaintiff had a normal gait and station; normal posture; no deformities, malalignments, or tenderness in her spine or pelvis; and normal strength and tone in her lower extremities. (R.p. 690-692). In August 2011, Dr. Lieberman noted that Plaintiff was doing well, that she went to the beach daily, experienced no chest pain or shortness of breath, and was planning to travel to Georgia the following week. (R.pp. 693-695).

On October 10, 2011, state agency physician Dr. Jean Smolka opined that Plaintiff could perform light work; that Plaintiff had credible occasional headaches but there was no evidence of recurrent, intractable migraine headaches; and there was no evidence of severe chronic migraine



impairment. (R.pp. 172-178). Dr. Olin Hamrick, a state agency psychologist, opined on October 11, 2011 that Plaintiff's anxiety was non-severe. (R.p. 173). On January 10, 2012, state agency physician Dr. Isabella McCall opined that Plaintiff could occasionally lift and carry up to twenty pounds and frequently up to ten pounds;[3] could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could frequently climb ramps/stairs; could never climb ladders, ropes, scaffolds; should avoid concentrated exposure to extreme cold and heat; and should avoid all exposure to hazards (machinery, heights, etc). (R.pp. 185-187). On January 20, 2012, state agency psychologist Dr. Judith Von opined that Plaintiff's anxiety-related disorder resulted in no restriction in her activities of daily living; only mild difficulties of social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (R.p. 184).

On July 16, 2012, Dr. William Gammon completed a medical statement regarding Plaintiff's headaches. He checked boxes indicating that Plaintiff had migraine headaches that were accompanied by nausea, vomiting, and increased sensitivity to noise; she experienced migraine headaches several times a month; and each episode lasted more than twenty-four hours. Dr. Gammon opined that Plaintiff would not be able to work while suffering a headache. (R.pp. 728-729).[4]

---

[3]The standard for light work. See n. 2, supra.

[4]There are no medical records accompanying this statement, and it is unclear whether, when, or if Dr. Gammon ever examined or treated the Plaintiff. Plaintiff cites to the records of Inlet Medical Associates as being associated with this opinion, but those records do not reflect that any examination of the Plaintiff was ever performed by Dr. Gammon. See (R.pp. 646-666, 673-674, 677, 702-717, 719-725).



## **Severe Impairments/RFC**

Plaintiff contends that the ALJ failed to consider all of her impairments, in particular her migraine headaches and right knee osteoarthritis, in making the RFC assessment. She claims that the ALJ failed to discuss the medical records concerning her right knee, erred in finding that her migraine headaches were not a severe impairment, and failed to discuss how these impairments would affect her ability to perform work.

This claim is without merit, as a review of the ALJ's decision confirms that he considered all of Plaintiff's impairments, including considering them in combination, in determining that Plaintiff had the RFC to perform a range of light work. (R.pp. 36-39, see also 33-35). The ALJ's findings are supported by the medical record and by Plaintiff's testimony that she sat for at least five to six hours per day, stood and walked for a couple of hours per day, and could lift ten to fifteen pounds (R.p. 159). Plaintiff has not challenged the ALJ's findings that her heart conditions and hypertension predated Plaintiff's July 2010 alleged date of onset and were longstanding and stable (see R.pp. 37-38), and that she continued to work with these conditions until her retirement in July 2010. Further, although a former physician advised Plaintiff to avoid strenuous activities, which she defined as no lifting of heavy objects, Plaintiff admitted that none of her treating physicians advised her not to work. (R.p. 154).

With respect to Plaintiff's knee complaints, there is no indication of any diagnosis or treatment of arthritis of her right knee during the relevant time period.[5] Although Plaintiff argues that x-rays confirmed osteoarthritis of her right knee in November 2010, those x-rays were of Plaintiff's

---

[5]As noted above, Plaintiff's diagnosis of "mild" osteoarthritis of her right knee was in 2008, when she was still working, and she continued to work thereafter for two years. (R.p. 444).



left knee.  Plaintiff was prescribed medication for her left knee and was told to return if her pain did not improve, but there is no indication of further followup for either knee.  (See R.p. 659). Additionally, at Inlet Medical Associates on November 28, 2011 and May 29, 2012, it was noted that Plaintiff had normal joints and muscles and full range of motion of all joints; (R.pp. 707, 724); and during visits from September 2010 to August 2011, Dr. Lieberman repeatedly noted that Plaintiff's musculoskeletal examinations  were normal with normal gait and station and normal strength and tone. (R.pp. 683, 685, 688, 691, 694).  See Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]. Plaintiff herself testified in August 2012 that her right knee arthritis was less severe than it had been a year and a half earlier.  (R.p. 153).

As for Plaintiff's claim concerning migraine headaches, the ALJ specifically considered Plaintiff's headaches and found that they were not a severe impairment because they were adequately controlled with medications. (R.p. 34).  This finding is supported by substantial evidence including the opinions of the state agency physicians (Dr. Smolka and Dr. McCall) who considered Plaintiff's headaches and found them to not be a severe impairment.  (R.p. 173, 176, 183-184, 187). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].  Additionally, in February 2010 (a few months before Plaintiff's alleged onset of disability date), Plaintiff reported she had had no recent headaches; (R.p. 735); while records from Inlet Medical Associates from August 2010 to November 2011 contain only generalized notations that Plaintiff suffered from headaches and was prescribed medications.  (See R.pp. 646-666, 719-721).  During a May 2012 visit to Inlet



Medical Associates for medication refills, it was noted that Plaintiff's medications were continued and that the impression was "[a]cute episode."  (R.pp. 722-724).

There is nothing in these records to establish reversible error in the ALJ's conclusion. See Thomas v. Celebreeze, 331 F.2d 541, 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Blalock, 483 F.2d at 775 [it is the claimant who bears the burden of proving her disability].  Plaintiff herself testified at the hearing that she had had migraine headaches since around 1995; (R.pp. 151, 153); but despite this condition, she was able to continue working until 2010, and there is no indication in the medical records to establish any significant worsening of this condition after that time.[6]  See Orrick v Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability]; Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)[finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration].

Finally, although the ALJ did not find that Plaintiff's headaches or knee impairments were severe, he did find other impairments to be severe and continued the sequential evaluation process during which he also discussed evidence concerning these impairments.  (R.pp. 37-38). Hence, even if an error *was* committed at step two of the analytical framework, it was harmless

---

[6]Although Dr. Gammon opined in July 2012 that Plaintiff suffered from migraine headaches several times a week and would not be able to work while suffering these headaches, the ALJ properly discounted this opinion, as discussed herein, infra.



because the ALJ considered all of Plaintiff's impairments at later steps. See, e.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); Washington v. Astrue, 698 F.Supp.2d 562 (D.S.C. 2010). This claim is without merit.

### Opinion Evidence

As noted, one of Plaintiff's claims of error is that the ALJ failed to properly evaluate the July 2012 opinion of Dr. Gammon. Plaintiff appears to claim that Dr. Gammon is one of her treating physicians; see Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions]; and argues that Dr. Gammon's opinion is supported by the medical record because on five of the nine occasions Plaintiff was treated at Inlet Medical Associates prior to Dr. Gammon's opinion, migraines or headaches were documented. Review of the cited records, however, shows that in August 2010 Plaintiff felt well and had no acute problems, with Fioricet and Promethazine being prescribed for headaches only "as needed". (R.pp. 664-666). In November 2010, Plaintiff had a headache with a sinus infection, and the only assessments noted were nasal cavity/sinus disease and acute sinusitis. (R.pp. 661-662). On May 24, 2011 it was noted that Plaintiff "has headaches," but there was no assessment of migraines and no headache medications were prescribed on that visit (R.pp. 650-652). In November 2011, Fioricet was prescribed for use for headaches, again "as needed". (R.pp. 706-709). In May 2010, it was noted that Plaintiff had had an "acute" episode of headache, for which Promethazine and Fioricet were prescribed to be used on an as needed basis.

These records did not require a finding by the ALJ that Plaintiff's headaches were a "severe" condition. Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly

11



focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"].  In addition to these records not establishing that the ALJ committed reversible error in his findings, there is also no indication that Dr. Gammon saw Plaintiff on any of these occasions.  See, also, n. 4, supra.  Hence, there is no indication that Dr. Gammon, who only appears to have completed a form in July 2012, was even a treating physician.

Further, even if it is assumed that he *was* Plaintiff's treating physician, substantial evidence supports the ALJ's decision to discount Dr. Gammon's opinion because it is not supported by the medical evidence of the record.  See Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight"](citations omitted).  The ALJ also properly gave Dr. Gammon's statement little weight because it merely reflected Plaintiff's subjective complaints (R.p. 38).  See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms].  Finally, as noted by the Commissioner, Dr. Gammon's opinion that Plaintiff cannot work with her headaches is not a medical opinion, but instead is an opinion on the ultimate issue of whether Plaintiff's can or cannot work, which is an issue



reserved to the Commissioner, and is not entitled to any special significance.  See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(d) ["A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled. "].

Plaintiff also argues that migraines were diagnosed by Kaiser Permanente.  However, review of the cited records (all of which are prior to Plaintiff's alleged onset date) indicate that Plaintiff reported in October 2006 that her migraines were less frequent and were relieved by Fioricet; (R.p. 731); and while Dr. Tesfazion noted in May and August 2009 that "migraine" was on Plaintiff's "active problem list," no specific treatment or medications were suggested or prescribed at those visits (R.p. 410, 566).  See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [condition is not disabling if reasonably controlled by medication or treatment].  Contrary to Plaintiff's argument, this evidence actually supports the ALJ's findings, as Plaintiff was working during this period of time and there is no evidence to show a significant worsening of this condition.  See Orrick, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

Plaintiff also argues that the ALJ erred in giving great weight to the state agency opinion (the opinion of Dr. McCall), "which is confusing given that the ALJ conceded [Plaintiff] had several severe impairments which significantly reduced her RFC to a fairly restricted range of light work activity..." Plaintiff's Brief, ECF No. 21 at 23.  She also asserts that the ALJ erred in assigning greater weight to the opinion of a non-treating, non-examining source "that reviewed a partial record



13

well before much of the ultimate evidence of record was submitted", and that the ALJ's decision to give greater weight to the opinions of non-treating providers than that of Plaintiff's treating physician was contrary to the treating physician rule. However, the ALJ's decision to assign great weight (see R.p. 38) to the opinions of the state agency reviewing officials is supported by substantial evidence. See 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."]; Smith, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. Contrary to Plaintiff's assertion, there are only a few medical records after the time of Dr. McCall's opinion, and with the exception of Dr. Gammon's July 2012 statement, these generally mirror the earlier findings concerning Plaintiff's impairments.[7] Plaintiff has pointed to nothing in these records that contradict or would likely have significantly changed Dr. McCall's opinion. Additionally, Plaintiff testified at the August 2012 hearing that her overall condition remained "about the same" during the prior year two years. (R.p. 156).

In sum, Plaintiff has failed to show that the ALJ erred in assigning greater weight to Dr. McCall's opinion than that of Dr. Gammon. See Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004)[disagreeing with argument that ALJ improperly gave more weight to RFC assessments of non-examining state agency physicians over those of examining physicians]; see also Johnson v. Barnhart, 434 F.3d at 657 [ALJ can give great weight to opinion of medical expert who has

---

[7]After Dr. McCall's opinion was rendered (in January 2012), Plaintiff was seen on two occasions at Inlet Medical Associates (March and May 2012), and once by Dr. Lieberman (June 2012). (R.pp. 719-721, 722-724, 726-727).



thoroughly reviewed the record]. This claim is without merit. <u>Kellough v. Heckler</u>, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)].

### Past Relevant Work

Plaintiff also contends that the ALJ failed to comply with SSR 82-62 in determining that she could perform her past work. In particular, she argues that the ALJ made no specific findings or analysis regarding the physical and mental demands of her past relevant work, and failed to consider her testimony (R.pp. 147-153, 161) that she had a high rate of absenteeism due to her deteriorating health, experienced periods of fatigue following v-tach spells, that she would be unable to drive for six months after a defibrillator incident (her previous job required her to drive to many other offices), and that her previous employer made special accommodations for her due to her frequent absenteeism from work and her inability to climb stairs during a fire drill. Plaintiff further argues that the ALJ failed to adequately consider her testimony as to the effects of her irritable bowel syndrome, migraine headaches, and right knee arthritis on her ability to work.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if she is capable of performing her past relevant work either as she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that she is incapable of performing her past relevant work. <u>See</u> <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995); <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992). In determining this issue, Social Security Ruling 82-62 requires the ALJ to determine the following when evaluating whether a claimant can perform her past relevant work:



1.    A finding of fact as to the individual's RFC.

2.    A finding of fact as to the physical and mental demands of the past job/occupation.

3.    A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 86-62.

The ALJ complied with SSR 82-62 because he made a finding of fact as to Plaintiff's RFC (see Tr. 36-39), determined that the physical and mental demands of Plaintiff's past work as a field service assistant and mechanical engineering assistant did not require the performance of work-related activities prohibited by her limitations through testimony from the vocational expert ("VE"),[8] and determined that Plaintiff's RFC would permit her past relevant work. The VE testified that Plaintiff's past job consisted of a combination of two jobs, one part in which she went out in the field (which was done at the light work level) and a second part in which she performed design work (which was done at the sedentary work level). (R.pp. 164-165). The VE then identified the Dictionary of Occupational Titles ("DOT")[9] numbers of Plaintiff's past relevant work (field service engineer -DOT 828.261-01 and engineering assistant - DOT number 007.161-018),[10] which Plaintiff

---

[8]The Commissioner may employ the services of a VE at step four of the sequential evaluation process to help determine whether a claimant can perform his or her past relevant work. See 20 C.F.R. § 404.1560.

[9]The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy." Burns v. Barnhart, 312 F.3d 113, 119 (3d Cir. 2002). "[T]he DOT, in its job definition, represents approximate maximum requirements for each position rather than the range." See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998).

[10]The Commissioner may rely on the general job categories of the DOT as presumptively applicable to the claimant's prior work. DeLoache v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983).



has not disputed. The ALJ then asked the VE if Plaintiff could perform her past relevant work with the RFC limitations noted in the decision, and the VE responded by stating that Plaintiff could perform both of her prior occupations. (R.pp. 165-166). See Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980)[ALJ may rely on VE opinion based on training, experience and familiarity with skills necessary to function in various jobs]; cf. Ray v. Colvin, No. 12-3307, 2014 WL 1093075, at * 11 (D.S.C. March 17, 2014).

Although the ALJ did not explicitly cite that he was relying on the VE's testimony when stating in the decision that Plaintiff could perform her past relevant works; see (R.p. 39); it is implicit that he relied on this testimony to make his decision, as only the VE's testimony leads to a conclusion that Plaintiff's past relevant work consisted of two different jobs (Plaintiff's job listed in her disability report was "engineering assistant" - R.p. 274 and the prior disability determinations found that Plaintiff could perform the job of engineering assistant as generally performed in the national economy - R.p. 177, 188). Hence, any inartfulness in the ALJ's conclusion is not a basis on which to overturn the decision. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case"], quoting Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ["a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."].

SSR 86-62 does provide that the claimant is the primary source for information about their past work, and Plaintiff argues that the ALJ failed to take into account her testimony concerning her past relevant work. However, a review of the ALJ's decision shows that he did discuss Plaintiff's



testimony including that she had to drive to various offices, had physical conditions that caused her to miss up to seven days of work per month, that her employer provided accommodations during fire drills so she did not have to climb up and down stairs, that she experienced migraines and irritable bowel syndrome[11] symptoms that sometimes rendered her unable to do anything at all, that she had arthritis in her right knee, and that she experienced problems with her defibrillator which left her feeling tired. (R.pp. 36-37). The ALJ then specifically found that Plaintiff was not fully credible and that her symptoms were not credible to the extent they were inconsistent with the RFC found by the ALJ based on the medical evidence and her activities of daily living. (R.p. 37). Therefore, a plain reading of the decision shows that the ALJ *did* take into account Plaintiff's testimony, and no reversible error is shown in the ALJ's treatment of this evidence. See Ables v. Astrue, No. 10-3203, 2012 WL 967355 at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluation the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96-7p.]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. Plaintiff has not even formally objected to the ALJ's credibility determination.

Additionally, as to Plaintiff's alleged inability to climb stairs, Plaintiff admits that her past employer provided assistance during fire drills. Thus, she was able to perform her job as she had done in the past, while the jobs identified by the VE required stair climbing only occasionally or not at all, such that Plaintiff could perform them as generally performed in the economy. See DOT

---

[11]The ALJ found that Plaintiff's irritable bowel syndrome was a non-severe impairment. R.p. 34).



828.261-014 (field service engineer), 1991 WL 681801; DOT 007.161-018 (engineering assistant, mechanical equipment), 1991 WL 646275. With respect to Plaintiff's assertion that she could not perform her past relevant work because she would be medically unable to drive for six months after an episode with her heart that caused her defibrillator to activate, there is no evidence to support that she had or was likely to have such an episode. Plaintiff stated that her defibrillator had activated on only one occasion in the past, when she had a syncopal episode with probable SVT that occurred in October 2001. <u>See</u> (R.pp. 154, 423-424). This was approximately nine years *before* her alleged disability onset date, she continued to work for many years after that episode, and, after an ablation was performed, medical records fail to indicate any further such episodes.

Plaintiff's argument that the ALJ failed to comply with SSR 82-62 in reaching his findings and conclusion is without merit.

### <u>Conclusion</u>

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.



19

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 6, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

